UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | 3:21-CR-00156(KAD) |
| | ) | |
| v. | ) | |
| | ) | |
| Gabriel PULLIAM a/k/a "G," Tahjay LOVE, a/k/a "Goon," Zaekwon MCDANIEL, a/k/a "Gap," a/k/a "Yung Gap," Ezra ALVES, a/k/a "EJ," a/k/a "Ezzy," Malik BAYON, a/k/a "Pop," a/k/a "Dirt," D'Andre BURRUS, a/k/a "Dopeman," Justin CABRERA, a/k/a "J.U.," Laderrick JONES, a/k/a "Lexus," Jaivaun MCKNIGHT, a/k/a "Sav," Julian SCOTT, a/k/a "Ju Sav," Dayquain SINISTERRA, a/k/a "Quan," Ahmed ALVES, a/k/a "Stones," James GRAHAM, a/k/a "Little Cuz," & Dimitri BLANDING | ) ) ) ) ) ) ) ) ) ) ) ) | DECEMBER 6, 2023 |

## MEMORANDUM OF DECISION
## RE: ECF NO. 463 MOTION TO SUPPRESS[1]

Kari A. Dooley, United States District Judge:

The parties' familiarity with the allegations contained in the Indictment and the procedural history of this matter is presumed.

By Motion dated November 20, 2023, Defendant Zaekwon McDaniel seeks to suppress evidence—the extraction of his cell phone —which was searched pursuant to a search warrant authorized by Magistrate Judge Spector on May 8, 2019. Defendant McDaniel seeks a hearing pursuant to *Franks v. Delaware,* 438 U.S. 154 (1978) because the Affidavit in support of the

---

[1] Defendant McDaniel's motion is titled "Motion to Adopt and Join." Therein, he identifies a number of motions filed by his co-defendants as motions he would join. Among those motions listed is Defendant Pulliam's motion to suppress evidence seized from Mr. Pulliam's cell phone. He asserts that the same shortcomings identified by Defendant Pulliam are present with respect to the warrant issued for his cell phone. Defendant Scott filed an identical Motion to Adopt and Join, see ECF No. 464, but the Court agrees with the Government that Defendant Scott does not have standing to challenge the search of Defendant McDaniel's phone and Defendant Scott makes no effort to establish otherwise. Defendant Scott's motion, to the extent it seeks the suppression of this evidence is therefore DENIED and will not be further addressed.

warrant to search his cell phone recklessly or intentionally failed to include information that would have significantly undermined the credibility of CW#4, whose information was relied upon to establish probable cause. CW#4 was Shan Thompson, who now stands convicted of making false statements to the Federal Bureau of Investigation. And there is little dispute that some (though not all) of the information provided by Thompson and included in the Affidavit was not accurate. The Government submits however that no hearing is necessary and suppression is not warranted because the Affidavit establishes probable cause for the search of the cell phone even after the Thompson information is excised from the Affidavit. The Court agrees with the Government.[2]

"To be lawful under the Constitution, a search warrant must, *inter alia*, set forth evidence establishing probable cause to believe a crime has been committed and that evidence of that crime can be found in what is to be searched." *United States v. Weigand*, 482 F. Supp. 3d 224, 240 (S.D.N.Y. 2020). "[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232 (1983). Although the probable cause standard "does not demand 'hard certainties' ... it does require more than a 'hunch.' " *United States v. Lauria*, 70 F.4th 106, 128 (2d Cir. 2023) (quoting *Gates*, 462 U.S. at 238, and *Terry v. Ohio*, 392 U.S. 1, 22, 27 (1968)). Therefore, "[i]n determining whether probable cause exists to support the issuance of a warrant, a judge must make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Boles*, 914 F.3d 95, 102 (2d Cir. 2019) (cleaned up). This decision "must be grounded in sufficient facts to establish

---

[2] The Government also denies that the affiant was either intentionally untruthful in its omissions or acted with a reckless disregard for the truth of the affidavit's allegations. The Court need not reach this issue.

the sort of 'fair probability' on which 'reasonable and prudent men, not legal technicians, act.' " *Lauria*, 70 F.4th at 128 (quoting *Gates*, 462 U.S. at 231, 238, 241).

As set forth in *Franks v. Delaware*, a defendant may "challenge the veracity of a sworn statement used by police to procure a search warrant." 438 U.S. 154, 155 (1978). If, after a hearing, "the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded ..." *Id.* at 156. However, when a *Franks* motion is filed, the Court convenes a hearing on the motion only if "the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, **and if the allegedly false statement is necessary to the finding of probable cause** ..." *Id.* at 155–6 (emphasis added); *United States v. Thomas*, 788 F.3d 345, 349 n.6 (2d Cir. 2015). If the disputed information is not material or necessary to the ultimate finding of probable cause, however, a *Franks* hearing is unnecessary. *United States v. Osborne*, 739 F. App'x 11, 16–17 (2d Cir. 2018) (summary order) (affirming denial of *Franks* hearing concerning wiretap and search warrant applications where erroneous information "was neither material nor necessary to an ultimate finding of probable cause"); *United States v. Aguiar*, 737 F.3d 251, 263 (2d Cir. 2013) (same; pen register and trap and trace warrant).

Here, the search warrant sought evidence of violent crimes in aid of racketeering in connection with the ongoing investigation of a number of Waterbury street gangs, to include 960, of which Defendant McDaniel is an alleged member. See, ECF No. 522-1 at 1, 12. ATM was identified as a rival gang to 960. *Id.* at 12. The applicable time period for which the search was

authorized was June 2017 through January 2018. *Id*. at 2. During that time, there had been several shootings believed to be the product of ongoing gang rivalries. Those shooting occurred on October 31, 2017, November 18, 2017, and November 22, 2017. *Id*. at 13–16.

The Affidavit states that on October 31, 2017, Juwan Butler, an ATM gang member, was shot in the leg in the area of Bank Street and Porter Street in Waterbury. Surveillance footage, witness interviews and evidence from the scene revealed that four individuals, travelling in a tan Pontiac Bonneville, stopped in the street and fired at Butler. *Id*.

In December 2017, CW#1, gave a statement to gang task force detectives regarding the shooting. He/she told the detectives the following:

> CW#1 was with Butler on October 31, 2017. At approximately 10:00 EST … CW#1 and Butler walked together to the corner store at Bank and Porter Street. CW#1 watched Butler pay for his items and leave the store. As CW#1 walked out of the store, he/she saw Butler in the grass across the street from the store. As CW#1 crossed the street, he/she saw a tan car approach Burler. CW#1 observed the driver and passengers point guns out of the windows and shoot at Butler. CW#1 dropped to the ground to avoid the gunfire. As the tan car drove away, CW#1 observed four people sitting in the car. CW#1 could not see the occupants' faces because they wore hoods and masks. CW#1 however, noticed that a rear passenger's braids were exposed from the hood and mask. Based on the braids and gang rivalry CW#1 identified McDaniel, a known member of the 960 street gang, as the rear passenger with the braids CW#1 observed.

*Id.* at 13. The Affidavit also includes information from CW#3, who is identified as a member of 960. CW#3 stated that McDaniel and co-defendant Tahjay Love shot at Butler on October 31, 2017. Specifically, that "960 members communicated via telephone prior to the shooting in order to arrange the shooting. CW#3 stated that McDaniel called CW#3 to ask CW#3 to drive by the ATM territory to see who was in the area. After CW#3 drove by the area and identified ATM members in the area, CW#3 called McDaniel to tell him where the ATM members were located." *Id.* at 14. On November 14, 2017, Waterbury police recovered a tan Pontiac Bonneville and recovered cartridge casing from inside the vehicle that matched casings recovered at the

scene of the Butler shooting as well as other shootings that had occurred in the ATM territory in Waterbury. *Id.* McDaniel's DNA was recovered from the steering wheel of the Bonneville.

CW#3 also provided information regarding a shooting on November 18, 2017. He/she stated that on that date, CW#3 was at a club in Waterbury when he/she saw Clarence Lewis, a known ATM member. CW#3 called McDaniel to report that CW#3 had seen Lewis and that CW#3 feared Lewis meant to harm CW#3. "CW#3 left the club and drove to meet McDaniel and Love. The three 960 members then drove to the Angel Drive area in Waterbury. McDaniel and Love exited the car and shot towards a car they thought belonged to a different ATM member." *Id*. at 14.

The Affidavit also includes information regarding the deaths of Clarence Lewis and Antonio Santos, two known members of the ATM gang. Lewis and Santos were shot on November 22, 2017, and the vehicle the two fled the scene in subsequently crashed. They both succumbed to their injuries. Thompson provided information as to the role he,[3] McDaniel and others played in these deaths which is not considered in the probable cause analysis.

The Affidavit also includes that during the investigation of the November 22, 2017 deaths, an employee at Wendy's restaurant told police that she heard gun shots in the parking lot of the restaurant. *Id*. at 15. Investigators retrieved five .40 caliber Smith and Wesson cartridge casings, one 9 mm Luger cartridge casing from the Wendy's parking lot. *Id*. Investigators also located a firearm magazine close to a vehicle believed to be linked to Santos. McDaniel's DNA was on the magazine recovered in the parking lot. *Id*. Further, forensic testing of the shell casings from the Wendy's parking lot were determined to be fired from the same gun as was used in the

---

[3] Thompson placed himself at the scene of the murders. However, he was not there and therefore would not have had personal knowledge as to the events he described and which were contained in the Affidavit.

5

October 31, 2017, shooting of Butler in which McDaniel had been implicated by both CW#1 and CW#3. *Id*. at 15–16.

The information contained in the Affidavit, without any consideration of the information provided by Thompson, provides ample support for a finding of probable cause to search McDaniel's cell phone for evidence regarding violent crimes in aid of racketeering for the time period authorized. As detailed above, through witnesses (other than Thompson), ballistic evidence and/or DNA, McDaniel was implicated in all three shootings. In addition, CW#3 detailed how he communicated with McDaniel regarding two of the shootings by telephone. Special Agent Heether described, based upon his training and experience, the nature of the data that would likely be contained on McDaniel's phone which would be further evidence of his involvement in these events. *Id*. at 16–18. Special Agent Heether's experience was also consistent with CW#3's statement that the shootings were coordinated by telephone.

For all of these reasons, Defendant McDaniel's motion to suppress is DENIED.

**SO ORDERED** at Bridgeport, Connecticut, this 6th day of December 2023.

 */s/ Kari A. Dooley*
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE